

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES JIRAK and ROBERT        )
PEDERSON, on behalf of themselves    )
and all others similarly situated,      )
                                      )      **No. 07 C 3626**

        Plaintiffs,           )
                                        )      **Judge Ruben Castillo**

      v.                      )
                                        )
                                        )
ABBOTT LABORATORIES, INC.     )
                                        )
        Defendant.          )

## MEMORANDUM OPINION AND ORDER

James Jirak and Robert Pederson ("Plaintiffs") bring this putative class action against Abbott Laboratories, Inc. ("Defendant") for alleged violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (R. 49, First Am. Compl. ("FAC").) Presently before the Court is Plaintiffs' motion for conditional certification of the class and approval of Plaintiffs' proposed notice to potential class members. (R. 54, Pls.' Mot. for Conditional Cert.) For the reasons stated below, the Court grants the motion for conditional certification but declines to approve the notice proposed by Plaintiffs.

## RELEVANT FACTS & PROCEDURAL HISTORY

The named Plaintiffs were employed by Defendant as pharmaceutical representatives.[1] (R. 49, FAC ¶¶ 8-9.) They allege that during their employment they regularly worked in excess

---

[1] Since the filing of this lawsuit, three additional pharmaceutical representatives have consented to be plaintiffs: Steve Tyliszczak ("Tyliszczak"), George Resley ("Resley"), and Karen Hobson ("Hobson"). (R. 36, 38, 40.) A few months after Tyliszckak joined the suit, the parties stipulated to the dismissal of his claims without prejudice. (R. 52.)

of 40 hours per week but did not receive overtime pay as required by the FLSA. (*Id.*) Defendant has allegedly employed thousands of pharmaceutical representatives throughout the country, and none have been paid overtime in accordance with the FLSA. (*Id.* ¶¶ 12-13.) According to Plaintiffs, Defendant improperly classifies its pharmaceutical representatives as exempt from the FLSA's overtime requirements; Plaintiffs allege that such positions are not exempt and that they are thus entitled to thousands of dollars in overtime pay. (*Id.* ¶¶ 1, 23-28.)

Plaintiffs move for conditional class certification and Court-authorized notice to potential class members pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). (R. 54, Pl.'s Mot. for Conditional Class Cert.) Plaintiffs seek to send notice to 4,708 individuals who are working or have worked as pharmaceutical representatives and were subject to Defendant's "company-wide policy or plan that it would not pay overtime to pharmaceutical representatives."[2] (*Id.* at ¶¶ 2, 5.)

## ANALYSIS

The FLSA provides: "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Section 16(b) of the FLSA allows for a collective action "against any employer . . .

---

[2] Plaintiff seeks to send notice to persons working in a pharmaceutical representative position with any of the following titles: "pharmaceutical sales representative"; "professional sales representative"; "specialty sales representative"; "senior specialty sales representative:"; and "senior pharmaceutical sales representatives." (R. 49, FAC ¶ 2.) Plaintiffs originally sought to send notice to 4,752 employees within six different pharmaceutical divisions, but in their reply they concede that 44 of these employees are not similarly situated to the others due to distinctions in their job duties. (R. 61, Pls.' Reply at 3-4 & n.5.) Plaintiffs no longer request that notice be sent to these individuals. (*Id.* at 4.)

by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions under the FLSA are different than class actions authorized by Federal Rule of Civil Procedure 23, because in FLSA cases the plaintiff is given notice and an opportunity to *opt in*, rather than notice and an opportunity to *opt out*. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (explaining differences between collective action under FLSA and class action certified pursuant to Rule 23). Potential class members who choose not to opt in are not bound by the Court's decision. *Vanskike v. Peters*, 974 F.2d 806, 812-13 (7th Cir. 1992); *Woods*, 686 F.2d at 580.

The FLSA does not specify the details of how collective actions are to proceed, and thus, the management of these actions has been left to the discretion of the district courts. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170-72 (1989). Although the Seventh Circuit has not decided the issue, the majority of courts—including this Court—have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. *See Mielke v. LaidLaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004); *see also Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 (11th Cir. 2003); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001); *Heckler v. DK Funding*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007); *Flores v. Lifeway Foods*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2001).

In the first step, "Plaintiffs only need to make a minimal showing that others in the potential class are similarly situated." *Mielke*, 313 F. Supp. 2d at 762. This determination is

made using a "lenient interpretation" of the term "similarly situated." *Id.* "[A] court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. If the plaintiff can make this minimal showing, the class is conditionally certified and notice is sent to potential class members, giving them an opportunity to opt in. *Heckler*, 502 F. Supp. 2d at 779; *Mielke*, 313 F. Supp. 2d at 762.

In the second step, which occurs after the parties have engaged in discovery and the opt-in process is completed, "the court's inquiry is more stringent." *Mielke*, 313 F. Supp. 2d at 762. Once it is known which employees will be part of the class, the Court must reevaluate the conditional certification "to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Heckler*, 502 F. Supp. 2d at 779. At step two, the Court must consider: (1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns. *Mielke*, 313 F. Supp. 2d at 762.

## I.    Conditional Certification

Here, Plaintiffs argue that conditional certification is appropriate because Defendant "had a company-wide policy or plan that it would not pay overtime pay to pharmaceutical representatives." (R. 54, Pls.' Mot. for Conditional Cert. ¶ 2.) In Plaintiffs' view, permitting this case to proceed as a collective action "allows [for] the efficient resolution in one proceeding of common issues of law and fact, and provides plaintiffs with the opportunity to lower individual costs to vindicate rights by the pooling of resources." (R. 56, Pls.' Mem. in Supp. of Mot. at 7).

4

Defendant opposes the motion, arguing that Plaintiffs have "failed to meet their burden to establish a common and unlawful policy" under the FLSA, and further, that there are "significant differences in the job duties of putative class members" such that conditional certification of the class is not appropriate. (R. 60, Def.'s Opp'n to Pls.' Mot. at 8, 10.) Defendant asserts that its pharmaceutical division is comprised of six different "franchises"—primary care, immunology, neurology, virology, renal care, and acute care—and that "the responsibilities of sales representatives vary greatly depending upon franchise, position, product and customer." (*Id.*) In Defendant's view, pharmaceutical representatives may fall under one of the FLSA exemptions, including the outside sales exemption, 29 U.S.C. § 213(a)(1), or the administrative exemption, 29 U.S.C. § 213(a)(1), and that making this determination will require an individualized inquiry. (*Id.* at 9-13.) Defendant claims that it performed a "separate and independent review of each sales position" to determine the exempt status of each position, and thus, there is no policy decision common to all potential class members. (*Id.* at 9.)

Contrary to Defendant's argument, there is evidence in the record developed thus far showing that the potential class members are similarly situated. First, despite some variations in their job duties, there is evidence that pharmaceutical representatives have the same essential responsibility: calling on physicians and promoting Defendant's pharmaceutical products. (*See* R. 57, Pls.' App., Ex. N; R. 60, Def.'s Opp'n, App., Ex. E; Ex. G; Ex. I; Ex. K; Ex. W.) Moreover, Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for

5

purposes of the FLSA even though there are distinctions in their job titles, functions, or pay.[3] *See*

*Delgado v. Ortho-McNeil*, No. 07-263, 2007 WL 2847238, at *3 (C.D. Cal. Aug. 6, 2007)

("[W]hile the jobs of the various [pharmaceutical] sales representatives are not identical, they

bear sufficient similarity to warrant conditional certification for the purpose of distributing

notice."); *Perry v. Nat'l City Mtge., Inc.*, No. 05-891, 2007 WL 1810472, *3-4 (S.D. Ill. Jun. 21,

2007) (conditionally certifying class of 5,500 loan originators despite defendant's argument that

job duties varied depending on their classification, because loan originators had the same

"overall mission"); *Garza v. CTA*, No. 00-438, 2001 WL 503036, at *3 (N.D. Ill. May 8, 2001)

("That the plaintiffs and other potential plaintiffs may have different jobs . . . [and] earn different

amounts of money . . . does not mean that they are not operating under the same policies that

allegedly entitle them to overtime pay.").

There is also evidence that the pharmaceutical representatives were subject to a common

policy classifying them as exempt. Defendant's Rule 30(b)(6) designee, Tim Hying ("Hying"),[4]

testified at his deposition that to his knowledge Defendant has never paid overtime to any its

pharmaceutical sales representatives, that Defendant has "always" classified the position as

---

[3] The Court finds distinguishable the cases from this District cited by Defendant. *See, e.g., Forney v. TTX Co.*, No. 05-6257, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006) (plaintiff could not satisfy step one because she "fail[ed] to identify a single . . . employee who performed job duties similar to hers."); *Phaahler v. Consultants for Architects, Inc.*, No. 99-6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) (denying conditional certification because determining which plaintiffs were independent contractors and which were employees subject to FLSA would require fact-intensive, individualized inquiry).

[4] Hying was formerly Human Resources Director in Defendant's pharmaceutical products division, and is now "Director of the Customer Support Group within the Company's [Human Resources] shared services organization." (R. 60-2, Def.'s Opp'n to Pls.' Mot., Ex. B, Hying Decl. ¶ 2.)

exempt, and that he did not conduct a person-by-person review or interview any pharmaceutical

representatives about their job responsibilities as part of the process of classifying them as

exempt. (R. 57, Pls.' App., Ex. I, Hying Dep. at 18-33, 72.) Although Defendant performed

some type of review of the pharmaceutical representatives' exempt status in 2004 or 2005, it

appears that the review was performed on a categorical basis as to the different job titles rather

than on an individual basis.[5] (See id. at 72-84; R. 60-2, Def.'s Opp'n to Pls.' Mot., Ex. B, Hying

Decl. ¶ 4.) As another court noted in an FLSA case brought by pharmaceutical representatives,

"It is somewhat disingenuous . . . for Defendants to argue that they should be permitted to treat

all sales representatives as one group for purposes of classifying them as exempt, but that this

court can only determine the validity of that classification by looking to the specific job duties of

each individual sales representative." Delgado, 2007 WL 2847238, at *2.

Additionally, the application of an FLSA exemption is an affirmative defense on which

Defendant carries the burden of proof. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97

(1974); Barefield v. Village of Winetka, 81 F.3d 704, 710 (7th Cir. 1996). Whether

pharmaceutical representatives are exempt from the FLSA cannot be determined based on the

limited record developed at this stage. Perez v. Radio Shack Corp., No. 02-7884, 2003 WL

21372467, at *11 (N.D. Ill. Jun. 13, 2003) (conditionally certifying class despite concerns that

plaintiffs may be exempt from FLSA because record was not yet fully developed). The Court

does not agree with Defendant that determining the application of an exemption will necessarily

require an inquiry with respect to the job duties of each individual plaintiff. The Court finds it

---

[5] At his deposition Hying refused to answer numerous questions about the process of classifying these positions as exempt based on the attorney-client privilege. (R. 57, Pls.' App., Ex. I, Hying Dep. at 71-72, 82-83.)

more likely that the exemption determination can be made on a categorical basis as to the different franchises; if necessary, the class can be narrowed to include only certain pharmaceutical representatives if not all are similarly situated. Moreover, as Plaintiffs point out, the distinctions in the job duties of pharmaceutical representatives—such as the type of medications they promote, the number and type of physicians they meet with each day, and the level of control they have in tailoring their presentations—may not even be material to the exemption determination. *See Delgado*, 2007 WL 2847238, at *3 (differences among pharmaceutical representatives in terms of size of regions, sales pitches, products sold, and types of clients were immaterial to whether they were properly classified as exempt from FLSA).

These are issues that must be decided at later stages of the litigation. *See Mielke*, 313 F. Supp. 2d at 762. Defendant's argument about dissimilarities in the class is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery. *Bastian v. Apt. Invest. & Mgmt. Co.*, No. 07-2069, 2007 WL 5234235, at *1 (N.D. Ill. Sept. 17, 2007) (defendant's argument that individual issues would predominate more appropriately decided after discovery at the "more rigorous" step two analysis). The mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class. *Heckler*, 502 F. Supp. 2d at 780-81; *Gambo v. Lucent Tech., Inc.*, No. 05-3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005).

At this stage, Plaintiff has made the minimal showing necessary for conditional certification and notice to the potential class members. If it turns out that there is no uniform policy common to the class members who opt in, or that the class is "hopelessly heterogenous," *Jonites v. Exelon Corp.*, 522 F.3d 721, 725 (7th Cir. 2008), then the case will not be permitted to

proceed as a collective action. *See Mielke*, 313 F. Supp. 2d at 763 (denying class certification at step two based on existence of individualized affirmative defenses and other factors). For these reasons, conditional certification is granted.

## II.    Notice

Once a collective action is conditionally approved, "the court has managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-LaRoche*, 493 U.S. at 170-71. In approving a notice to potential plaintiffs, the Court must be careful not to create an "apparent judicial sponsorship of the notice." *Woods*, 686 F.2d at 581. The Seventh Circuit explained: "[W]e think it improper for the district court to direct that the notice go out on its letterhead, over the signature of the clerk of court or other judicial officer" because "the judicial imprimatur is likely to be misunderstood as a representation that the suit probably has merit." *Id.* Although the notice proposed by Plaintiffs is not on the Court's letterhead, it states at the top of the first page, "United States District Court for the Northern District of Illinois." (R. 57, Pls.' App., Ex. A.). This language could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case. As the Supreme Court observed, "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of a judicial endorsement of the merits of the action." *Hoffman-LaRoche*, 493 U.S. at 174.

Thus, Plaintiff must remove this heading from the notice or, alternatively, include the entire caption of the case so that it is clear the notice is a court document and not some type of letter from the Court. Further, the revised notice must contain conspicuous language stating that

9

the Court has not taken any position on the merits of this action, and should also advise potential class members not to contact the Court with questions about the litigation.

Although the notice otherwise appears generally proper, Defendant argues in a footnote contained in its opposition that Plaintiffs' proposed notice should not be approved because it "contains language that is unnecessary, misleading and calculated to persuade recipients to join the lawsuit." (R. 60, Def.'s Opp'n to Pls.' Mot. at 15 n.3.) It is unclear specifically what Defendant objects to, because for unknown reasons Defendant does not include any explanation or analysis on this point. Nevertheless, given that the notice proposed by Plaintiffs must be revised, the Court finds the best course is for Plaintiffs' counsel to meet and confer with defense counsel to devise a fair and accurate notice that is acceptable to both sides. The Court expects this process will be completed by the next status date; if any specific objections to the notice remain at that time, the Court will resolve them on that date.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for conditional certification and approval of proposed notice (R. 54) is granted in part. This case is conditionally certified as a collective action pursuant to Section 216(b) of the Fair Labor Standards Act, and notice may be sent to the 4,708 individuals identified in the motion. However, for the reasons stated herein, the notice proposed by Plaintiffs is rejected.

The parties are directed to exhaust all settlement possibilities in light of this opinion. The parties shall appear for a status hearing in open court on **August 6, 2008** at **9:45 a.m.** and shall be prepared to present the Court with a revised notice to potential class members as specified in this opinion. A firm trial date for this lawsuit will be set at the next status hearing.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: July 22, 2008**